No. 27,351.

. THE STATE OF KANSAS, *Appellee,* v. HARRY SAUNDERS, *Appellant.*

SYLLABUS BY THE COURT.

1. PERJURY—*Evidence—Sufficiency.* The evidence is held sufficient to support a conviction on a charge of perjury.

2. SAME—*Sufficiency of Proof.* The rule that in a prosecution on a charge of perjury where but one assignment is made it is necessary to a conviction that all the statements pleaded must be found to have been falsely made is held not to be violated in the present case.

3. SAME—*Information—Necessity of Setting Forth True Facts.* Assuming the rule in ordinary cases to be that in an information for perjury the allegation of the testimony in question being false should include a setting forth of the true facts by way of antithesis, it does not apply in the situation presented here, the perjury being predicated on a denial of having uttered threats, and the issues being too simple to require any elaboration of the statement of falsity.

4. SAME—*Election of Charges for Conviction.* The situation is held not to have required an election by the state as to which charge it would rely on for a conviction.

5. SAME—*Instructions—Materiality of Alleged False Testimony.* In a prosecution on a charge of perjury an instruction that the statements complained of were as a matter of law material to an issue on trial is held to be fatally erroneous, there having been no showing by the record or otherwise as to what the issues were in the proceeding in which the testimony was given.

Appeal from Doniphan district court; W. F. MEANS, judge *pro tem.* Opinion filed February 12, 1927. Reversed.

*Arthur S. Brewster,* of Troy, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

MASON, J.: Harry Saunders was brought before a justice of the peace under the portion of the code of criminal procedure relating to proceedings to prevent the commission of offenses (R. S. 62-201, 62-203), and upon the taking of evidence was bound over to the district court. A hearing was there had at which Saunders testified in his own behalf. The present action was brought charging him with having committed perjury in the course of that testimony. He was convicted, and appeals.

Indictment and Information, 31 C. J. p. 789 n. 91. Perjury, 30 Cyc. pp. 1437 n. 72, 1451 n. 83, 1452 n. 88, 1456 n. 20; 21 R. C. L. 268.

State v. Saunders.

The testimony which is relied upon as constituting perjury, and which for the present will be assumed to have been given by the defendant at the hearing of a surety of the peace proceeding in the district court, was in the form of questions and answers as follows:

"Q. Did you at that time make any statement about cutting anyone up? A. No, sir.

"Q. If they didn't quit accusing you of those things? A. Not that I remember of.

"Q. You would know if you said it? A. I didn't say it.

"Q. (By the court.) Did you make any threats about doing anything to Mr. Miller? A. No, sir.

"Q. (By the court.) At that time? A. No, sir.

"Q. (By the court.) Did you ever? A. Never did."

1. For the defendant it is ·contended that the evidence did not support a conviction, one of the grounds relied upon being that there was no evidence that any threats testified to as having been made by the defendant were spoken by him with reference to Miller. One witness for the state gave this testimony:

"He said, 'I am going to cut that son-of-a-bitch up some of these days in such shape he cannot be sewed together any more.'

"That is what Mr. Saunders said? Yes, sir.

"Who did he say that about? Mr. Miller."

Another's testimony with regard to the same conversation included this:

"He said he was going to cut this man, Wendle Miller, up so he couldn't be sewed together any more.

·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·

"His exact words were, 'I am going to cut Wendle Miller up so he cannot be sewed together'? That in substance.

"Is that what he said? He said that son-of-a-bitch.

"Did he use Wendle Miller's name? Yes.

"His name was in there? Yes, sir.

·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·

"Would you just make that statement again. Just his words, his words exactly? Well, he was talking about Wendle Miller and he said, 'I am going to cut that son-of-a-bitch up so he cannot be sewed together any more.'

"He didn't say, 'I am going to cut Wendle Miller up'? He was talking about him.

"Is that what he said? He made that threat.

"Did he leave Wendle Miller out? He was talking about Wendle Miller when he said it, 'I am going to cut that son-of-a-bitch up.'

"He didn't say I am going to cut Wendle Miller up? No, not like that."

In the defendant's brief the statements of the witnesses that the

words were spoken of Miller are characterized as mere opinions. We see no difficulty in a witness stating as a fact, from his knowledge of the context—the other portions of the conversation in the course of which it occurred—to whom the speaker referred.

A further contention of the same character is that no showing was made as to the time when the threats were claimed to have been made. One witness said it was in the first part of November, 1925, the place being described. In some situations the exact time might be material, but the broad denial of the making of threats with respect to Miller at any time makes it unimportant here. There is nothing in the record to suggest any prejudice from the omission to fix more definitely the time of the utterance of the threats. It is true, however, that the phrase "at that time" in the first question in the part of the defendant's testimony on which the prosecution is based was shown to refer to threats which Miller testified the defendant had made against him, but which are not shown anywhere in the record, Miller not having been a witness in this case.

2. A final reason advanced for holding the state's proof insufficient is that not all the statements included in the testimony of the defendant on which the prosecution is based were shown to be false. It has been said: "If  .  .  .  the indictment is in one assignment, failure to prove all the statements substantially as alleged is fatal to the prosecution." (30 Cyc. 1452.) This rule has been applied in somewhat extreme cases. (*Welch v. The State,* 88 Tex. Crim. Rep. 346; *People v. Senegram,* 27 Cal. App. 301.) Whatever its force generally we think it is not substantially violated here. The defendant had testified that he had never made any threats to do anything to Miller. The state produced evidence that he had said he would cut Miller up—this was the only form of threat claimed to have been employed. If the jurors had not accepted this evidence as true they would not have convicted. If it was true then every one of the defendant's answers set out in the information was necessarily false. If he had threatened to cut Miller up he could not truly have said he had not made any statement about cutting anyone up. As already mentioned, the testimony of the defendant that he did not, at a time indicated, make any statement about cutting anyone up, referred to an occasion on which according to Miller he had made threats against him. The answer, "Not that I remember of," becomes immaterial in view of the next reply: "I didn't say it." That practically amounted to a withdrawal of the

plea of want of memory and an assertion that he remembered what took place and had not made the statement in question. It would be pressing the rule very far to hold the defendant could not be convicted without proof that he remembered making the statement, but in any event the evidence warranted the jury in finding that to be the fact.

3. The sufficiency of the information is attacked on the ground that it merely alleged that the defendant's testimony in the peace bond case was false, without setting out the actual facts by way of antithesis. There is much authority that such pleading is bad (30 Cyc. 1437; 21 R. C. L. 268, note 10), but there is also considerable to the contrary, as shown in the Oklahoma case cited in the note just referred to, and in a note on the subject in 124 American State Reports, 671, where it is said: "Clearly, a direct and distinct allegation of the falsity of the matter is of the very essence of the indictment, but when the falsity is alleged in ordinary and concise language, with such certainty and in such manner as to enable a person of common understanding to know what is intended, the indictment should be sustained. Some of the courts have shown a most commendable disposition to take this view of the law, and to repudiate the extreme technical requirements further than is necessary to advise the defendant accurately with reference to the essential requirements charged." (p. 674.) See, also, *United States v. Freed*, 179 Fed. 236; *Blakey v. Commonwealth*, 183 Ky. 493; *Atkinson v. State*, 133 Ark. 341.

The rule seems quite technical. Whether or not it should ordinarily be followed we think in the present case the allegation of falsity is sufficient. The testimony of the defendant alleged to be false was essentially in the form of negative answers to questions asked, which were very simple and covered much the same ground. A situation may readily be imagined where the naked allegation that a statement was false would not fairly advise a defendant of the essence of the charge against him, but we do not regard that here presented as one of them. It is well said of the allegation of falsity: "It must particularize wherein the testimony was false, a general allegation that it was so not being commonly sufficient. While in some connection a short negative will satisfy this requirement, in others much amplification will be necessary." (3 Bishop's New Crim. Proc., § 919.) An excellent summary of what the law at least should be is: "The true rule is that while it is not sufficient

merely to aver that the oath or affidavit was false, but it is essential that it must appear what the truth is, that requirement is met if the allegation that a certain statement is false necessarily implies that its converse is true, and necessarily implies what the converse is. A necessary implication is equivalent to an allegation in such cases." (*Loudermilk v. State,* 110 Ark. 549, 554.)

4. Complaint is made of the overruling of a motion to require the state to elect on which charge it would rely for a conviction. As we have already indicated we think the answers given to the several questions may fairly be treated as forming one statement—a denial of having uttered threats. The point is much the same as that made in urging the failure to prove the falsity of all the defendant's answers.

5. A final contention is that the evidence did not justify an instruction given by the court that the testimony ón which the prosecution was based was material to the issue on trial when it was given. The state did not introduce an affidavit on which the inquiry before the justice of the peace was based, or a warrant issued thereon, or a transcript or other evidence of the proceedings had in the justice court in respect thereto, or the recognizance for the appearance of the defendant in the district court, so that there was an absence of any formal showing as to just what the issues were in the hearing in the course of which the perjury is alleged to have been committed. There was introduced, however, a transcript of all the testimony given by the defendant in a proceeding by the state against him, the character of which is not otherwise indicated. His testimony there given relates to controversy between himself and Miller and to conversations with others about it, and includes denials of making threats against him. It is shown to have been given in January, 1926, prior to January 11. The testimony on which the perjury charge is based is shown to have been given on January 4, 1926, but there is no direct evidence that it was given in the surety bond proceeding. That such is the case may seem probable from the unlikelihood of there having been more than one criminal proceeding against the defendant heard at about the same time, to which his testimony would have been pertinent. This falls short, however, of the certainty required in felony prosecutions. Even if it be assumed that the proceeding in which the defendant's testimony was given was one to bind him over to keep the peace there

would be difficulty in saying as a matter of law it was material to the issue. The question of materiality was not sent to the jury as one of fact to be determined by them, but as one conclusively settled by the court. The omission of the plaintiff to show, by record evidence or otherwise, what the issues were in the proceeding in which the perjury is alleged to have been committed, renders the instruction that the testimony was material fatally erroneous.

The judgment is reversed for a new trial.

HARVEY, J., concurs in the order of reversal, but is of the opinion the defendant should be discharged.